

**SIGNED this 31st day of January, 2013.**

_____
**JOHN C. AKARD
UNITED STATES BANKRUPTCY JUDGE**

_____

# United States Bankruptcy Court
**Western District of Texas
San Antonio Division**

| | |
|---|---|
| *IN RE* | BANKR. CASE NO. |
| VICENTA GARCIA | 09-54517 |
| *DEBTOR* | CHAPTER 7 |
| VICENTA GARCIA | |
| *PLAINTIFF,* | |
| v. | ADV. NO. 11-05149 |
| NORTH STAR CAPITAL ACQUISITION, LLC AND MICHAEL J. SCOTT, P.C. | |
| *DEFENDANTS* | |

**MEMORANDUM OPINION**

The trial of this matter was held on August 14, 2012. The following constitutes this court's findings of fact and conclusions of law.[1]

---

[1] The Hon. Leif Clark heard this matter on August 14, 2012. Unfortunately, he retired before he was able to rule on this matter. Pursuant to Federal Rule of Civil Procedure 63 (which is made applicable to

1

I. *Background Facts*

Vicenta Garcia, the Plaintiff in this case, has been employed as an automobile claims adjuster for several years. In 2008, Garcia's mother was diagnosed with cancer and moved in with Garcia to receive care during her final years. Throughout this period, Garcia's debt continued to rise and she fell farther behind on her bills, and eventually Garcia filed for Chapter 7 protection in November of 2009.

Central to this case were two accounts Garcia had with Wells Fargo, in which she had fallen behind, eventually resulting in each account being sold to a different debt buyer, the first to LTD Financial Services ("LTD") and the other to Zenith Acquisition ("Zenith"). From here, the identity of the parties becomes a bit murky, as Zenith shifted their newly acquired account to North Star Capital Acquisitions, LLC, ("North Star") a wholly owned subsidiary of and collection arm for Zenith. North Star in turn hired Firstsource Advantage, LLC ("Firstsource") to act as a collection agency on their behalf. Throughout the spring of 2009, Firstsource contacted Garcia on behalf of North Star seeking to collect the obligation owed, with little result. Firstsource and North Star then hired the law firm of Michael J. Scott, P.C. to act as their collection attorney in May of 2009.

Similarly, throughout the spring of 2009, LTD also made attempts to collect on their account from Garcia, with similarly poor results. Then in July of 2009, LTD also hired the law firm of Michael J. Scott, P.C. ("Scott") to act as their collection attorney in this matter. This wasn't mere coincidence, as Scott handles several hundred thousand collection cases at one time, and has created a case management system from the ground up to organize and manage the caseload. As per company procedure, after being hired or referred a case, Scott checks to see if the accountholder has a pending or active bankruptcy case. In both May and July of 2009, Scott checked to see if Garcia was in bankruptcy and found no pending or active bankruptcy filings. Scott proceeded to file two separate law suits against Garcia, one in August on behalf of North Star and the other in October on behalf of LTD.

When Garcia filed for bankruptcy in November, notice was sent to all creditors listed on her schedules. Firstsource, Zenith, and LTD were all listed as creditors, while North Star was

---

Bankruptcy Cases bny Federal Rule of Bankruptcy Procedure 9028), the parties were given notice that the undersigned judge would conclude this matter and were given an opportunity to recall witness, but both declined to do so. The undersigned judge listened to a transcript of the trial, review the offered exhibits and the record of this Adversary Proceeding prior to issuing this opinion.

not. Despite these notices being sent out to both Firstsource and LTD, neither company contacted Scott to inform the law firm of the bankruptcy filing. Garcia received her discharge on March 1, 2010, notice of which was sent to all listed creditors, and thus, again North Star was not sent the notice of discharge.

Scott, unaware of any bankruptcy proceedings, continued in his collection suits. First, Scott filed a Motion for Default Judgment in the North Star lawsuit. Several weeks later, Scott served Garcia with the LTD lawsuit. At this point, Garcia had not only filed bankruptcy, but had been granted her discharge. Garcia contacted her attorney, who in turn informed Scott of the bankruptcy proceedings and granted discharge. After receiving this information, within 10 days Scott had flagged the LTD account as "in bankruptcy," filed non-suit, had the case dismissed without prejudice, and returned the file to LTD.

However, Scott's office failed to cross-reference Garcia to see if Scott was handling any other accounts regarding her. North Star's account was *not* flagged as "in bankruptcy." Thus, the attorney handling the North Star suit against Garcia continued that litigation, filing a Motion for Default Judgment, which was granted on April 14, 2010, just 5 days after the LTD suit had been dismissed and the file closed. Apparently, Garcia knew nothing of the default judgment.

No action was taken for nearly a year, until Scott, representing North Star, began contacting Garcia seeking to recover on the default judgment. Garcia received several letters stating that North Star had a final judgment entered against her and enforcement actions would be taken. Garcia again contacted her bankruptcy attorney, who filed this suit alleging violation of the discharge injunction, as well as violations of the Fair Debt Collection Practices Act and the Texas Debt Collection Act.

**II.** *Discussion*

**1.** Jurisdiction

Bankruptcy jurisdiction "is grounded in, and limited by, statute." *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 (1995); *In re Wilborn*, 609 F.3d 748 (5th Cir. 2010). 28 U.S.C. § 1334 grants federal district courts subject matter jurisdiction over four types of bankruptcy matters:

(1) "cases under title 11,"
(2) "proceedings arising under title 11,"
(3) proceedings "arising in" a case under title 11, and

3

>   (4) proceedings "related to" a case under title 11.

*In re U.S. Brass Corp.*, 301 F.3d 296 (5th Cir. 2002). The first category refers to the bankruptcy petition itself. *Id*. The second, third, and fourth categories, all listed in section 1334(b), "operate conjunctively to define the scope of jurisdiction. *Id*. "Arising under proceedings are matters invoking a substantive right created by the Bankruptcy Code." *Wood v. Wood (In re Wood),* 825 F.2d 90, 97 (5th Cir. 1987). Bankruptcy judges may hear all proceedings "arising in" title 11, as well as otherwise "related to" a case under title 11. Proceedings "arising in" are "generally thought to involve administrative-type matters" or "matters that could arise only in bankruptcy." *Id*. A proceeding is "related to" a bankruptcy if "the outcome of that proceeding could *conceivably* have any effect on the estate being administered in bankruptcy." *In re Wood*, 825 F.2d 90, 93 (5th Cir. 1987) (citing *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3rd Cir. 1984)).[2] The bankruptcy court's "related-to" jurisdiction is not limitless. *Id*.

Federal district courts are granted supplemental jurisdiction under 28 U.S.C. section 1367, however, bankruptcy courts may not exercise this supplemental jurisdiction. *See In re Smith*, 2012 WL 566246 (Bankr. W.D. Tex. Feb. 21, 2012) (quoting *Walker v. Cadle Co. (In re Walker),* 51 F.3d 562, 572–573 (5th Cir. 1995)). However, 28 U.S.C. section 157(a) permits a district court to refer "any and all proceedings arising under title 11 or arising in or related to a case under title 11" to the bankruptcy judges within the district. Section 157(a) distinguishes core and non-core cases, providing that bankruptcy courts may 'hear and determine' core cases, but noting that bankruptcy courts may only submit findings of fact and conclusions of law to the district court in non-core cases. *See* 28 U.S.C. § 157(b), (c).

>   a. Jurisdiction over Discharge Injunction Claim

There is little doubt that subject matter jurisdiction exists with regard to an action brought under section 524 of the Bankruptcy Code, as that is a matter that "arises under" title 11. *See* 28 U.S.C. § 1334(b). However, section 524 does not itself contain a specific remedy provision. One is implied, of course, by the injunctive language of the statute, but the lack of a specific remedial language similar to that found in section 362 (for violations of the pre-discharge automatic stay) has caused some confusion in the case law.

---

[2] The Supreme Court cites both *Pacor* and *Wood* favorably. *Celotex Corp. v. Edwards,* 514 U.S. 300, 308 n. 6, 115 S. Ct. 1493, 131 L.Ed.2d 403 (1995).

An obvious place to look for a remedy in the absence of a specific provision in section 524 itself, is section 105. That section states that

(a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.

. . .

(c) The ability of any district judge or other officer or employee of a district court to exercise any of the authority or responsibilities conferred upon the court under this title shall be determined by reference to the provisions relating to such judge, officer, or employee set forth in title 28. This subsection shall not be interpreted to exclude bankruptcy judges and other officers or employees appointed pursuant to chapter 6 of title 28 from its operation.

11 U.S.C. § 105.

Currently, there is a split among Circuits over how much enforcement power section 105 of the Bankruptcy Code grants a bankruptcy court. The Third, Sixth, and Ninth Circuits have held section 105 may not be used to enforce Code provisions other than the automatic stay. *See Joubert v. ABN AMRO Mortgage Group, Inc. (In re Joubert),* 411 F.3d 452 (3rd Cir. 2005); *Walls v. Wells Fargo Bank, N.A.,* 276 F.3d 502 (9th Cir. 2002); *Pertuso v. Ford Motor Credit Co.,* 233 F.3d 417 (6th Cir. 2000). These rulings have limited debtors by allowing them to only seek relief for an alleged violation of the discharge injunction through a contempt proceeding, not a private right of action (*i.e.*, court enforcement of its own orders, which may or may not include monetary compensation of the victim).

Both the First and Fifth Circuits have held contrary, finding that section 105, by its plain language, does authorize bankruptcy courts to enter orders to effectuate the discharge injunction imposed by section 524. *Bassette v. Avco Financial Services, Inc.*, 230 F.3d 439 (1st Cir. 2000); *Campbell v. Countrywide Home Laons, Inc.*, 545 F.3d 348, 356 n. 1 (5th Cir. 2008); *see Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 127 S. Ct. 1105 (2007). Said one court, civil contempt damages issued on a case-by-case basis from each individual "home court" may not be sufficient to "carry out the provisions" of the Bankruptcy Code or "enforce or implement court orders or rules, or to prevent an abuse of process." *In re Cano*, 410 B.R. 506, 543 (Bankr. S.D. Tex. 2009). Section 105 requires a court to fashion a remedy sufficient to ensure that debtors and creditors comply with the Code and court orders. *Id*. Limiting parties to only contempt actions

5

would supply an inadequate remedy and contravene section 105's plain language and congressional intent. *Id*. These authorities satisfy the court that it has both the jurisdiction and the judicial power to fashion appropriate relief under section 105, and that the court is not limited to the contempt remedy in fashioning that relief.

> b. Jurisdiction over Fair Debt Collection Practices Act and Texas Fair Debt Collection Practices Act Claims

The Fair Debt Collection Practices Act includes a grant of jurisdiction authorizing suits to be "brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction." *See* 15 U.S.C. § 1692k. However, the district court is also a court of competent jurisdiction by virtue of section 1334 of title 29, which grants subject matter jurisdiction over matters that at least "related to" the debtors' bankruptcy court. *See* 28 U.S.C. § 1334(b). Such matters can then (and are, by general order) referred to the bankruptcy court.

In *In re Burns*, the bankruptcy court for the Southern District of Texas concluded that it had "core" subject matter jurisdiction over a chapter 7 debtor's post-discharge debt collection claims because those claims were based on the same facts as the debtor's claim for violation of the discharge injunction, and issues involving a debtor's discharge are "core." 2010 WL 642312, at *4-5 (Bankr. S.D.Tex. Feb. 18, 2010). The court further reasoned that because the test for "related to" jurisdiction in the Fifth Circuit considers whether the "outcome could alter the debtor's rights, liabilities, options or freedom of action," it was broad enough to encompass the debtor's FDCPA and state law claims. *Id*. at *3 (quoting *In re Majestic Energy Corp.*, 835 F.2d 87, 90 (5th Cir. 1988) (citing *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383 (5th Cir. 2010))); *cf. Lomax v. Bank of America, N.A.*, 435 B.R. 362 (N.D. W. Va. 2010) (finding that claims arising under the bankruptcy code and FDCPA claims should be tried together in the district court for purposes of judicial efficiency).

In *In re Smith*, this court found a lack of subject matter jurisdiction over a debtor's post-discharge debt collection claims. 2012 WL 566246, at *8 (Bankr. W.D. Tex. Feb. 21, 2012). This court distinguished *Burns* on the basis that *Burns* was a chapter 7 case, while *Smith* was chapter 13, and thus the debtor's post discharge debt collection claims in *Smith* could have no

6

impact whatsoever on the administration of a debtor's concluded bankruptcy case.[3] *Id*. at n. 4. This plaintiff was involved in chapter 7, and has already received a discharge. The facts are on all fours with *Burns*.

Claims under the FDCPA or state debt collection protection acts do not raise substantive rights created under bankruptcy law, as such claims can exist independently of a pending or ongoing bankruptcy case, and are not otherwise defined as core proceedings under 28 USC § 157(b)(2). Thus, for the Court to have jurisdiction over those claims, they must fall within the Court's "related-to" jurisdiction. *Atwood v. GE Money Bank (In re Atwood*, 452 B.R. 249, (Bankr. D.N.M. 2011). The test for determining whether the bankruptcy court has "related-to" jurisdiction over a proceeding is whether the "outcome could have any conceivable effect on the estate being administered in bankruptcy." *Morrison v. Western Builders of Amarillo, Inc. (In re Morrison),* 555 F.3d 473, 479 (5th Cir. 2009). The *Pacor* decision (quoted by the court in *Morrison*) did not end its discussion of the scope of "related to" jurisdiction with this observation, however. IT went on to add that an action is related to bankruptcy if "the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively), and which in any way impacts upon the handling and administration of the bankrupt estate." *Equity Broad Corp. v. Shubert (In re Winstar Communs. Inc.),* 284 B.R. 40, 50 (Bankr. D. Del.2002) (quoting *Pacor v. Higgins,* 743 F.2d 984 (3d Cir. 1984)).

It is unfortunate that *Pacor* and its analysis have been applied without real analysis to broad arrays of circumstances far different from those that engendered the oft-repeated language in *Pacor*. In the context of a recently initiation chapter 11 reorganization proceeding for the Johns-Manville Corporation, references to the "administration of the estate" are natural and sensible. Over the years, however, courts have accepted as a truism that "related to a *case* under title 11" is exactly equivalent to "could conceivably affect the administration of the estate." *See e.g., In re Middlesex Power Equipment & Marine, Inc.*, 292 F.3d 61, 68 (1st Cir. 2002); *In re Gallucii*, 931 F.2d 739, 742 (11th Cir. 1991); *Rajala v. Gardner*, 2011 WL 453432, at *5 (D. Kan. Feb. 4, 2011); *LFP IP, LLC v. Midway Venture LLC*, 2010 WL 4923037, at *3 (C.D. Cal. Dec. 1, 2010) (citing *In re Feitz*, 852 F.2d 455, 457 (9th Cir. 1988)). The two expressions are in fact *not* equivalent, as is readily apparent when the two phrases are applied to other scenarios not

---

[3] This Court also cited to *Stern v. Marshall*, 131 S. Ct. 2594 (2011), as possible preclusion from a bankruptcy court entering final judgment on debt collection claims.

7

involving pending chapter 11 reorganizations. For example, a judgment in favor of the creditor on its underlying claim, as part of the creditor's section 523(a) action is easily "related to a case under title 11" but is almost never a matter that could conceivably affect the administration of the estate." *See In re Morrison*, 555 F.3d at 479. Court have also struggled with the *Pacor* language when considering litigation matters that are brought post-confirmation in a chapter 11 case, because such matters are almost always matters that are "related to a case under title 11" yet are usually not matters that "could conceivably affect the administration of the estate," because estate administration ends at confirmation. *See In re Resorts Intern.*, 372 F.3d 154, 163-71 (3d Cir. 2004).

As unfortunate as the case law development has been in this area, however, the precedents are now so well established that they cannot be ignored. The judicial gloss imposed on title 28 is, by now, more of a hard shell. The language of the case law ahs in effect supplanted the language of the statute. And the case law rule says that the plaintiff's FDCPA and TDCA causes of action cannot stand.

Resolution of FDCPA and TDCA claims has no impact on the administration of a debtor's post discharge estate. The debtor had already concluded their bankruptcy proceedings, as the bankruptcy estate has been discharged and no longer exists. When the factual allegations which give rise to a debtor's FDCPA and other state law claims all occurred post-petition, and as a result are not property of the debtor's estate. *In re Frambes*, 454 B.R. 437 (Bankr. E.D. Ky. 2011). Whatever their outcome, the debtor's estate will be unaffected and thus, the court lacks "related to" jurisdiction over these claims. *See, e.g., Vienneau v. Saxon Capital, Inc. (In re Vienneau),* 410 B.R. 329 (Bankr. D. Mass. 2009); *Harlan v. Rosenberg & Associates, LLC (In re Harlan),* 402 B.R. 703 (Bankr. W.D. Va. 2009); *Goldstein v. Marine Midland Bank., N.A. (In re Goldstein),* 201 B.R. 1 (Bankr. D. Maine 1996). Any factual nexus between the alleged conduct violating the discharge injunction and FDCPA/state law claims is insufficient, in and of itself, to confer "related to" jurisdiction on the Bankruptcy Court to hear the claim. *In re* Wilkinson, 2012 WL 112945, at *11 (Bankr. W.D. Tex. Jan. 12, 201) (citing *Atwood v. GE Money Bank (In re Atwood)*, 452 B.R. 249, (Bankr. D.N.M. 2011)). This court agrees with the majority of courts[4]

---

[4] *See Wynne v. Aurora Loan Services, LLC (In re Wynne),* 422 B.R. 763, 770 (Bankr. M.D. Fla. 2010) (finding that the debtors' claims under the FDCPA and the Florida Consumer Collection Practices Act were not causes of action created by the Bankruptcy Code and could exist outside of the bankruptcy case); *King v. 1062 LLP (In re King),* 2010 WL 3851434 (Bankr. D. Colo. 2010) (dismissing debtor's

that have concluded bankruptcy courts do not have "related to" jurisdiction over a chapter 7 debtor's post petition claims for unfair debt collection practices. Resolution of the FDCPA and TDCA claims will have no impact on the Plaintiff's bankruptcy estate. Thus, this court concludes that it lacks jurisdiction to hear this claim, but will submit findings of fact and conclusions of law to the District Court.

**2.** Liability of the Violation of the Discharge Injunction

The discharge of a debt in bankruptcy "operates as an injunction against the commencement or continuation of an action, employment of process, or an act, to collect, recover, or offset any such debt as a personal liability of the debtor." 11 U.S.C. § 524(a). To succeed on a violation of discharge injunction claim the debtor must "show by [clear and convincing evidence] that the offending . . . entity had knowledge [actual or constructive] of the discharge and willfully violated it by continuing with the activity complained of." *Torres v. Chase Bank USA, N.A. (In re Torres),* 367 B.R. 478, 490 (Bankr. S.D.N.Y. 2007). A discharge injunction is willfully violated if creditor (1) knows the injunction has been entered and (2) intends the actions that violate it. "That the actions are intentional—as opposed to the actual violation of the injunction being intentional—is sufficient." *In re McClure*, 420 B.R. 655 (Bankr. N.D. Tex. 2009); *see also In re Sandburg Financial Corp.*, 446 B.R. 793 (S.D. Tex. 2011). Subjective beliefs or the intent of the creditor are irrelevant to whether the violation of discharge injunction was "willful." *In re Thompson*, 456 B.R. 121 (Bankr. M.D. Fla. 2010). Unlike claims brought under the FDCPA or TDCA, no affirmative defense of bona fide error exists in a

---

claims for violation of the FDCPA and the Colorado Consumer Protection Act based on defendant's post-petition actions because such claims did not fall within the bankruptcy court's non-core jurisdiction); *Lambert v. Schwab (In re Lambert),* 438 B.R. 523 (Bankr. M.D. Pa. 2010) (no bankruptcy court jurisdiction over post-petition claims under FDCPA); *In re Shortsleeve,* 349 B.R. 297 (Bankr. M.D. Ala. 2006) (bankruptcy court lacked subject matter jurisdiction over debtor's FDCPA claim arising from defendant's post-discharge activity); *Csondor v. Weinstein, Treiger & Riley, P.S. (In re Csondor),* 309 B.R. 124 (Bankr. E.D. Pa. 2004) (holding that bankruptcy court could not exercise "related to" jurisdiction over FDCPA claim); *Vogt v. Dynamic Recovery Services (In re Vogt),* 257 B.R. 65 (Bankr. D. Colo. 2000) (bankruptcy court did not have jurisdiction to hear or adjudicate debtor's FDCPA claim); *Goldstein v. Marine Midland Bank, N.A. (In re Goldstein),* 201 B.R. 1, 5 (Bankr. D. Me. 1996) (holding that bankruptcy court lacked jurisdiction over FDCPA claims); *see also McGlynn v. The Credit Store, Inc.,* 234 B.R. 576, 584 (D.R.I. 1999) (District Court concluding that the Bankruptcy Court lacked jurisdiction over plaintiff's FDCPA claim because such claim could have no effect on the bankruptcy estate).

violation of discharge injunction actions. *See* 15 U.S.C. § 1692k(c); *see also Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 130 S. Ct. 1605 (2010).

Here, the liability regarding violation of the discharge injunction turns on whether North Star and Scott had received notice, actual or constructive, of the discharge. Discussing first North Star, who is a wholly owned subsidiary of Zenith, a creditor listed on the Plaintiff's bankruptcy schedules. Imputing knowledge of a parent corporation to its subsidiary is proper where they were "closely related business entities represented by the same lawyers." *Goodman v. Praxair, Inc.*, 494 F.3d 458 (4th Cir. 2007). There is no dispute that Zenith was sent and received notice of the Plaintiff's bankruptcy.

Further, there is no dispute that Firstsource, the collection agency hired by North Star, was sent and received notice. It has long been recognized that the general principle of agency law imputes knowledge from the agent or employee to the principal when it is received in the scope of the agent's employment and is in reference to matters over which the agent's duties or authority extends. *See Martin v. Xarin Real Estate, Inc.*, 703 F.2d 883, 890-91 (5th Cir. 1983); *see also Kemberling v. MetLife Life and Annuity Co. of Connecticut*, 368 Fed. Appx. 63, 68-69 (11th Cir. 2010).

North Star did not send a representative to trial nor dispute the issue of imputed knowledge, either through its parent company Zenith or through its agent Firstsource. As a result, this court finds that knowledge of the Plaintiff's bankruptcy has been imputed through both Zenith, as a parent corporation, and Firstsource, as an agent hired by North Star. Thus, North Star possessed actual knowledge of the bankruptcy discharge, and with no evidence to the contrary, North Star intended all the actions taken that violated the discharge, namely hiring Scott to engage in collection action against the Plaintiff.

Turning next to the issue of whether Scott had received knowledge of the discharge. First, the court acknowledges that Scott was never sent direct notice of the bankruptcy or the discharge, as he was not listed as a creditor on the schedules. Second, neither LTD nor Firstsource, both listed creditors who had hired Scott, informed the law firm of any bankruptcy proceedings. However, Scott was contacted by the Plaintiff's attorney regarding the LTD suit, and given notice that the Plaintiff had received a discharge through bankruptcy. This fact was notated in their computer case management system, but the employee did not cross-reference the LTD suit with the North Star Suit. It has been remarked that constructive notice may be "defined,

crudely, as a rule in which if you should have known something, you'll be held responsible for what you should have known." *Steel Warehouse Co. v. Abalone Shipping Ltd. of Nicosai,* 141 F.3d 234, 237 (5th Cir.1998). Where defendant had access to books and records that may have suggested knowledge, the mere access to the documents and records could establish constructive knowledge but not actual knowledge. *VTech Holdings Ltd. V. PriceWaterhouseCoopers, LLP*, 348 F.Supp. 2d 255, 269-70 (S.D.N.Y. 2004); *accord Nat'l Westminster Bank v. Weksel*, 124 A.D.2d 144 (N.Y. App. Div. 1987). "While an octopus may have eight legs, it is still the same octopus. As a result, bankruptcy law not only requires, but demands, that companies, whether large or small, have in place procedures to ensure that formal bankruptcy notices sent to an internally improper, but otherwise valid corporate address are forwarded in a prompt and timely manner to the correct person/department. As a consequence, [a creditor]'s defense that its collection efforts against the Debtors were merely the result of a flaw in its internal organizational structure—the argument that the right hand does not know what the left hand is doing—falls on deaf ears." *In re Perviz*, 302 B.R. 357, 367 (Bankr. N.D. Ohio 2003). There is no question that Scott was given notice of the Plaintiff's bankruptcy and had access to records reflecting such. While Scott's error may have been a bona fide clerical error that simply resulted in the Plaintiff's accounts falling through a reasonable system of precautionary measures, it was an error that could have and should have been avoided – the debtor certainly had no way of knowing that Scott's firm was handling more than one of her creditors. And no evidence was presented that simple cross-reference was not feasible.

The possibility exists that had the same scenario occurred at the firm of a sole practitioner or in a smaller firm engaged in a lower volume of cases, the cross-referencing of a party engaged in bankruptcy across multiple cases might have been caught more readily. However, if a sole practitioner received the same notice Scott did and did not take actions to prevent concurrent litigation against the same party from moving forward, a court would certainly not alleviate the sole practitioner of liability. How and why then, can a court make exception for a firm simply because it is bigger? Thus, the court concludes that Scott had knowledge of the bankruptcy discharge, and intended their actions leading to a default judgment, the attempts made to enforce and collect on that judgment, and the efforts to contact the debtor to further their collection of the obligation.

**3.** Damages of the Violation of the Discharge Injunction

Section 105(a) of the Bankruptcy Code states: "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). A civil contempt order "which compensates a debtor for damages suffered as a result of a creditor's violation of [the discharge injunction is] both necessary and appropriate to carry out the provisions of the bankruptcy code." *Placid Refining Co. v. Terrebonne Fuel and Lube (In re Terrebonne Fuel and Lube, Inc.)*, 108 F.3d 609, 613 (5th Cir. 1997). Compensatory damages, in addition to coercive sanctions, may be awarded as a sanction for civil contempt if a party willfully violates a discharge. *In re Eastman*, 419 B.R. 711, 725 (Bankr. W.D. Tex. 2009) (citing *Torres v. Chase Bank USA, N.A. (In re Torres)*, 367 B.R. 478, 490 (Bankr. S.D.N.Y. 2007). "In cases in which the discharge injunction was violated willfully, courts have awarded debtors actual damages, punitive damages and attorney's fees." *In re McClure*, 420 B.R. 655, 663 (Bankr. N.D. Tex. 2009)

A debtor who has suffered pecuniary losses as a result of a willful violation of discharge injunction may request an award of compensation for actual damages (in this context, actual damages means economic harm). *See McClure*, 420 B.R. at 663. (While emotional distress damages could not be awarded, debtors were entitled to compensation for substantial time and effort they expended in prosecuting their claims, at a rate of $50 per hour for 25 hours a debtor husband and debtor wife spent consulting with attorney, preparing for trial, and actual trial itself, in total amount of $2,500); *see also* 4 COLLIER ON BANKRUPTCY ¶ 524.02[2][c] (15th ed. rev. 2009) (and cases cited therein) (Actual damages may include damages for emotional distress).

The Plaintiff here presented evidence that she sustained $450 in actual out of pocket expenses as a result of medical care necessary to treat the flare up in neuropathy. The court further finds that the debtor suffered emotional distress, and that an appropriate award for such distress is $2,500. Finally the court finds that the debtor should recover her attorney's fees in prosecuting this case. Such fees shall be submitted by affidavit after this ruling, per the practice in the Western District of Texas.

**III.** *Findings of Fact and Conclusions of Law*
1. The Plaintiff is Vicenta Garcia.

2. The Defendants are North Star Capital Acquisitions, LLC ("North Star") and Michael J. Scott, P.C. ("Scott").
3. Plaintiff had two Wells Fargo Accounts, #4071100010993974 and #6048700001796164, respectively.
4. Both accounts were sold to debt buyers, LTD Financial Services ("LTD") purchased account #4071100010993974 ("LTD Wells Fargo Account"), and Zenith Acquisition ("Zenith") purchased #6048700001796164 ("Zenith Wells Fargo Account").
5. Zenith is the "governing person" of North Star, which is a wholly owned subsidiary of and collection arm for Zenith.
6. Firstsource Advantage, LLC ("Firstsource") is a collection agency hired by North Star.
7. Scott is an attorney who has been hired by both LTD Financial and Firstsource.
8. March 2009: Firstsource sent Plaintiff letter referencing collection on the Zenith Wells Fargo Account. Firstsource lists North Star as creditor.
9. May 2009: Firstsource hires Scott to commence in legal collection action on the Zenith Wells Fargo Account. On May 7, 2009, Scott checks the Zenith Wells Fargo Account for pending bankruptcy (no bankruptcy filing found).
10. July 2009: LTD hires Scott to commence in legal collection action on the LTD Wells Fargo Account. On July 7, Scott checks the LTD Wells Fargo Account for pending bankruptcy (no bankruptcy filing found).
11. Aug. 24, 2009: Scott (representing North Star) files cause #11C090448901 seeking collection on the Zenith Wells Fargo Account against the Plaintiff in state court ("North Star Suit").
12. Oct. 27, 2009: Scott (representing LTD) files cause #11C090509601 seeking collection on the LTD Wells Fargo Account against the plaintiff in state court ("LTD Suit").
13. Nov. 17, 2009: Plaintiff files Voluntary Ch. 7 Petition in the United States Bankruptcy Court for the Western District of Texas.
14. Nov. 20, 2009: Notice is sent to all creditors listed on schedules. Firstsource, Zenith, and LTD were all listed as creditors, while North Star was not.
15. Feb. 27, 2010: Motion for Default in North Star Suit filed.
16. Mar. 1, 2010: Discharge of Debtor granted.
17. Mar. 3, 2010: Notice of discharge sent to all creditors listed on schedules. Again, Firstsource, Zenith, and LTD were all sent notice, but North Star was not included on the creditor list.
18. Mar. 17, 2010: LTD (represented by Scott) serves Plaintiff with LTD Suit and citation.
19. Mar. 30, 2010: Plaintiff contacts Scott regarding the LTD Suit, informing of the bankruptcy and discharge. Scott's office flags Plaintiff's LTD Wells Fargo Account as "in bankruptcy."
20. Plaintiff's Zenith Wells Fargo Account is NOT flagged as "in bankruptcy." Scott admits that the attorney and employee staff handling Plaintiff's LTD Wells Fargo Account should have looked for the existence of additional accounts to flag in bankruptcy, but failed to do so.
21. Apr. 5, 2010: Scott files Non-Suit in the LTD Suit.
22. Apr. 9, 2010: LTD Suit is dismissed without prejudice. Scott closes Plaintiff's file the LTD Wells Fargo Account and returns the file to LTD.
23. Apr. 14, 2010: North Star (represented by Scott) is granted Default Judgment against Plaintiff in North Star Suit.

24. Mar. 30, 2011: Scott (representing North Star) mails letter to Plaintiff seeking to recover debt on North Star Suit Default Judgment.
25. June 6, 2011: North Star Suit Default Judgment abstracted by Scott.
26. Sept. 14, 2011: Complaint in this suit filed.
27. Jan. 11, 2012: Answer and Affirmative Defense filed by North Star and Scott.
28. Jan. 17, 2012: Scott submitted Order Vacating Judgment in North Star Suit, granted same day.
29. No evidence was presented that any Abstract of Judgment in favor of North Star against the Plaintiff was rendered to have no force or effect.
30. At no point did LTD contact Scott and inform Michael J. Scott personally, any attorney working for Scott, or any staff employee of Plaintiff's bankruptcy. The contract between LTD and Scott does not required LTD to inform Scott of bankruptcy proceedings.
31. At no point did Firstsource or North Star contact Scott and inform Michael J. Scott personally, any attorney working for Scott, or any staff employee of Plaintiff's bankruptcy. The contract between Firstsource and Scott does not required Firstsource to inform Scott of bankruptcy proceedings.
32. Scott handles hundreds of thousands of collection cases at a single time.
33. North Star did not send a representative to the trial proceedings.
34. Plaintiff has been diabetic for the past 8 years. Plaintiff was diagnosed with neuropathy in early 2011, a condition brought on by her diabetes. Stress causes the symptoms and pain associated with neuropathy to flare. Neuropathy is condition that results in nerve damage to the peripheral nervous system, leading to bouts of pain in the affected nerves.
35. Plaintiff filed chapter 7 bankruptcy to avoid judgments being filed against her by creditors. Apart from fear of emotional distress caused by pending judgments, Plaintiff works as an automobile claims adjuster and feared termination if a judgment was entered against her by a creditor. Plaintiff testified that other employees had been terminated for having judgments rendered against them.
36. After receiving Scott's letters regarding the final judgment against her in March 2011, one year after receiving her discharge, Plaintiff began suffering increased levels of stress and anxiety. This stress caused her neuropathy to flare up. She visited an emergency room, scheduled doctor appointments, and received injections in her hand to help handle the pain. While partially covered by insurance, Plaintiff spent $450 in out of pocket expenses.
37. During this same time, Plaintiff was prescribed Xanax and Cymbalta by her psychiatrist due to developing depression and anxiety.

### IV. *Conclusion*

For the reasons stated above, the court finds that Defendants North Star Capital Acquisitions, LLC and Michael J. Scott, P.C. violated the discharge injunction of Code § 542 (a)(2) and are therefore in contempt of this court. The Defendants are jointly and severably liable for $2,950, in addition to the debtor's attorney fees. This Court further finds that it lacks jurisdiction to hear claims under the FDCPA and TDCA. The court will enter a separate judgment to such effect.

####